UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

ADAM ROKUSON,

                Plaintiff,

          -against-

CENTURY EMPIRE SZECHUAN RESTAURANT INC.
and HELEN (LAST NAME UNKNOWN),

                Defendants.

-----------------------------------------------------------------------X

**MEMORANDUM AND ORDER**

12-cv-1615 (WFK)

**WILLIAM F. KUNTZ II, United States District Judge**

Plaintiff Adam Rokuson ("Plaintiff") sues Century Empire Szechuan Restaurant Inc. ("Century") and its manager Yu Zhang, referred to in both parties' papers as "Helen" with no last name ("Helen") (collectively "Defendants"). Plaintiff alleges that Defendants interfered with the exercise of Plaintiff's rights under the Family and Medical Leave Act, 29 U.S.C. §§2611-2619 ("FMLA"), and retaliated against Plaintiff for exercising such rights. Plaintiff also makes claims of discrimination under the New York City Administrative Code §8-107 and New York State Executive Law §296. Defendants move for summary judgment on Plaintiff's federal law claims and for consequent dismissal of the state and city law claims for lack of subject matter jurisdiction. Defendants argue that summary judgment is appropriate because (1) Century and the restaurant's subsequent owners are not employers under FMLA, and (2) Plaintiff has not made out a *prima facie* case of interference or retaliation under FMLA. For the reasons more fully described below, the parties have numerous genuine disputes over issues of material fact. As such, Defendants' motion for summary judgment is DENIED.

## BACKGROUND

The events recounted below are undisputed or described in the light most favorable to

Plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d

Cir. 2005).

**Ownership of Empire**

Defendant Century owned a Chinese restaurant located in Staten Island until March 1, 2009, when Century sold the restaurant to East 555 Inc. ("East 555"). Dkt. 20-4 ("Helen's Deposition") at 36, 38; Dkt. 21 ("Def.'s Reply") at 4. From March 1, 2009 to January 26, 2012, the restaurant was owned by East 555 and did business as Empire Szechuan Restaurant ("Empire"). Helen's Deposition at 38. Peter Lau ("Lau"), Helen's significant other, is the President and owner of East 555. Helen's Deposition at 19, 47; Dkt. 19-2 ("Lau Decl.") ¶¶1-2. In September 2011, in addition to East 555 (which then owned Empire), Lau held control of corporations that owned East Sushi (a Japanese restaurant in Staten Island) and Empire Szechuan Garden ("Garden") (a Chinese restaurant in Staten Island). Lau Decl. ¶2.

On January 26, 2012, East 555 sold Empire to another corporation, Empire King Inc. ("King"); under King's ownership, Empire continued to do business under the same name. Helen's Deposition at 37-38; *see also* Dkt. 19-4 ("Agreement of Sale"); Lau Decl. ¶6. Min Feng Liu ("Liu") is the President and owner of King. Dkt. 19-3 ("Liu Decl.") ¶¶1-2. Liu was also employed part-time at Empire starting in February 2012. Helen's Deposition at 68. Helen has worked at Empire since March 1, 2009 and has been a manager there since 2011. *Id.* at 36, 39.

Plaintiff brought this action against Century and not against King, Empire's current owner. *See* Dkt. 1 ("Complaint"); Liu Decl. ¶1. For reasons discussed below, the Court orders the joinder of King as a Defendant. *See* IIA below.

**Plaintiff's Employment with Empire**

Plaintiff began working for Century in 2007 and continued to work there after its 2009 sale to East 555, after which the restaurant began doing business as Empire. Complaint at ¶15; Lau Decl. ¶¶1-2. Helen was Plaintiff's supervisor and a manager from approximately 2011

onwards. Complaint at ¶16; Helen's Deposition at 39. Plaintiff further alleges that Helen represented to him and to other employees that she owned Empire, East Sushi, Garden, and a fourth restaurant called East Pacific Asian Kitchen ("Pacific"). Dkt. 20-2 ("Rokuson Decl.") at ¶¶5-6. Plaintiff alleges that, in addition to his work for Empire, he also worked for East Sushi, Garden, and Pacific under Helen's direction and management. *Id.* at ¶¶11-13, 18-23. Defendants, for their part, allege that Plaintiff was only ever employed at Empire, that the operations and finances of the various restaurants were separate and independent of each other, and that if Plaintiff or any employee occasionally did work for more than one of the restaurants, the employment relationships that each restaurant had with Plaintiff were separate. Helen's Deposition at 102-103; Lau Decl. at ¶¶22-26; *see also* Liu Decl. at ¶¶10-13. Liu further states that, after January 26, 2012, Peter Lau had no involvement in the operations or finances of Empire, which were separate from those of any other restaurant. Liu Decl. at ¶¶4, 14.

Empire has approximately 48 employees (Rokuson Decl. ¶7); East Sushi likewise has approximately 48 employees (*Id.* at ¶8); Pacific has approximately 40 employees (*Id.* at ¶9); and Garden has approximately 30 employees (*Id.* at ¶10).

**Plaintiff's Medical Leave**

On or about January 13, 2012, Plaintiff suffered a sciatica attack, and contacted Helen to inform her of his condition and his intent to take leave from work. Complaint at ¶20. Helen told him that he should come back when he felt better and that his job would be there for him when he returned. *Id.* at ¶21. However, when Plaintiff asked to come back to work, Helen gave him a reduced schedule. *Id.* at ¶32. Plaintiff alleges that this was interference and retaliation in violation of his rights under FMLA; he claims that Helen was acting out of discriminatory motives since he is not Chinese and was temporarily disabled. *Id.* at ¶35. Though he makes no

claims of discrimination under federal law, Plaintiff alleges that Defendants permitted Chinese workers to take leave and return to their full schedules. *Id.* at ¶¶26-29.

Defendants claim that Helen only placed Plaintiff on a reduced schedule out of caution and concern for his health, and that they wanted him to return to work slowly as his health improved. Dkt. 19-5 ("Helen's Decl.") at ¶¶50-52. Furthermore, Defendants point out that Plaintiff was never terminated; they state that Plaintiff is even now welcome to return to work at Empire at any time. *Id.* at ¶53.

## DISCUSSION

### I.    Summary Judgment Standard

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks and citations omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (internal editing omitted) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily

renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not

significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249–50 (1986) (internal citations omitted).

Here, Defendants move for summary judgment on the bases that (1) Empire is not an

employer under FMLA, and (2) that Plaintiff has failed to make a *prima facie* case for

interference with and retaliation for the exercise of his rights under FMLA. SJ Motion at 9-16;

Def's Reply at 7-9. Plaintiff responds that (1) Empire is either a single integrated employer or a

joint employer with East Sushi, Pacific, and Garden, (2) that King is a successor in interest to

East 555, and (3) that Plaintiff has established a *prima facie* case for both interference and

retaliation under FMLA. Dkt. 20-1 ("Pl.'s Reply") at ii. For the reasons set forth below,

Defendants' motion is DENIED.

## II.     Analysis
### A.  Joinder of King as a Defendant

As an initial matter, the Court hereby orders the joinder of King as a defendant. The

Court must, "if feasible," add as a party any "person who is subject to service of process and

whose joinder will not deprive the court of subject-matter jurisdiction" if "in that person's

absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P.

19(a)(1)(A); *see also* 19(a)(2). Courts generally consider joinder infeasible where "(1) where

joinder would deprive the court of subject matter jurisdiction; (2) where the court cannot exercise

personal jurisdiction over the absent person; and (3) where joinder would cause venue to be

improper." *Mazzocchi v. Windsor Owners Corp.*, 11-CV-7913, 2014 WL 594085, at *4

(S.D.N.Y. Feb. 11, 2014) (Torres, J.) (citing *4 Moore's Fed. Practice* § 19.02(3)(b) (3d ed.

1999)).

Here, subject matter jurisdiction arises out of Plaintiff's federal law claims against Defendants; such jurisdiction will be undisturbed by the addition of King as a Defendant. Furthermore, as King owns a restaurant operating in the Eastern District of New York, the Court can exercise personal jurisdiction over King and joinder will not cause venue to be improper. *See* Fed. R. Civ. Pro. 4(k); 28 U.S.C. § 1391(b), (c).

In King's absence as a named defendant, the Court will be unable to accord complete relief among the parties. Defendants allege that Century no longer exists, and provide supporting evidence from the New York State Department of State's Division of Corporations. Dkt. 18-2. King owns the business operation concerned in this dispute. Liu Decl. ¶1. The events Plaintiff complains of occurred after King's purchase of Empire (see discussion below). The motion for summary judgment presently before the Court describes King's size and operations in detail, because such facts are vital to the question of whether Plaintiff may obtain relief under FMLA. Dkt. 19 ("SJ Motion") at 9-10. Liu, the President and owner of King, has already submitted a declaration in this action, providing crucial information. *See* Liu Decl. Furthermore, failure to require King's joinder creates the possibility of a duplicative action against King in another forum. *See, e.g., Pan-Am. World Airways, Inc. v. Vetements, Inc.*, 08-CV-5480, 2010 WL 3632732, at *3 (S.D.N.Y. Sept. 16, 2010) (Holwell, J.) (requiring joinder where the joined parties were "too closely intertwined" with plaintiff's claims and where there was potential for duplicative actions if they were not joined); *see also New York v. Gutierrez*, 08-CV-2503, 2008 WL 5000493, at *14 (E.D.N.Y. Nov. 20, 2008) (Sifton, J.) (requiring joinder of interstate commission as defendant where, because commission regulated some of the territory concerned in the dispute, the court could not provide full relief in the commission's absence). King is

therefore a necessary party to this action. The Court hereby ORDERS Plaintiff to join King as a defendant within 30 days.

## B. Parties Dispute Material Facts Regarding Defendant Empire's Status as an Employer under FMLA

Here, summary judgment on the subject of Empire's status as an employer under FMLA would be premature because the parties dispute material facts regarding whether or not Empire is an employer under FMLA. The Court will discuss these disputed facts in turn.

### 1. There is a Genuine Dispute Over Facts Material to Whether Empire is Integrated with Other Restaurants.

An "employer" under FMLA is "any person engaged in commerce or in any industry or activity affecting commerce who employs 50 or more employees for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year." 29 U.S.C. § 2611(4)(A)(i). The term "employer" includes (1) "any person who acts, directly or indirectly, in the interests of an employer to any of the employees of such employer"; and (2) "any successor in interest of an employer." 29 U.S.C. § 2611(4)(A)(ii). An "eligible employee" under FMLA does not include an employee who (1) is employed at a worksite where his employer employs less than 50 employees; and (2) whose employer employs less than 50 employees within 75 miles of that worksite. 29 U.S.C. § 2611(2)(B)(ii).

Separate employers may be considered a single "integrated" employer under FMLA based on an evaluation of the following factors: (1) "[c]ommon management"; (2) "[i]nterrelation between operations"; (3) "[c]entralized control of labor relations"; and (4) "[d]egree of common ownership[ or ]financial control." 29 C.F.R. § 825.104(c)(2). No one factor determines whether two employers are considered an integrated employer; this determination must be made based on the "totality" of the "entire relationship" between the two

employers. *Id.* If separate employers are deemed to be one integrated employer, "the employees of all entities making up the integrated employer will be counted in determining employer coverage and employee eligibility." *Id.*; *see, e.g., Ghaffar v. Willoughby 99 Cent, Inc.*, 09-CV-509, 2010 WL 3420642, at *2-3 (E.D.N.Y. Aug. 27, 2010) (Gleeson, J.) (applying the factors listed above and concluding that defendant was integrated with other businesses).

Here, genuine disputes of material fact exist regarding whether Empire and East Sushi (or Garden, or Pacific, or some combination of the four) are, together, an integrated employer. Plaintiff claims that, under the ownership of both East 555 and King, Empire's relationship with East Sushi and the other restaurants allegedly owned or managed in common with Empire meets the "integrated employer" test under 29 C.F.R. § 825.104(c)(2). Pl's Reply at 9-10. In support of this claim, Plaintiff cites his own testimony that Helen supervised drivers for all four restaurants, that East Sushi and Empire would coordinate orders with deliveries using a bell system, that Empire drivers would generally handle deliveries for East Sushi, and that Helen represented to employees that she owned all four restaurants. Rokuson Decl. ¶¶5-6, 19, 23-24. These allegations, if true, suggest some degree of common management, interrelated operations, centralized control of labor relations, and possibly common ownership (whether by Helen or by her significant other Lau). *See* 29 C.F.R. § 825.104(c)(2).

Defendants state that the management, operations, and finances of all of the restaurants are separate. Lau Decl. ¶¶9, 11-20, 23-26; Liu Decl. ¶¶10-14. Nevertheless, Defendants acknowledge that Lau controlled East 555 until 2012 and still controls the corporations that own East Sushi and Garden. Lau Decl. ¶¶2, 5. East 555 has sold Empire to King; however, Empire's business operations remained the same after the sale. Liu Decl. at ¶6. Defendants also acknowledge that Plaintiff and other Empire drivers would make deliveries for East Sushi, though they state that these

8

drivers were still only employees of Empire and not of East Sushi. Helen's Deposition at 102. None of these facts prove that Empire is a single integrated employer. However, without more substantiation of the separateness of the restaurants from Defendants, these facts suggest that it is unclear whether Empire, East Sushi, and any of the other restaurants are an integrated employer. *See, e.g.*, *Ghaffar*, 2010 WL 3420642 at *3 (finding that businesses were integrated where all were owned by corporations controlled by one person, there was common management, and labor relations were centralized).

**2. There is a Genuine Dispute Over Facts Material to Whether Empire is a Joint Employer with Other Restaurants.**

Genuine issues of material fact also exist as to whether Empire is a joint employer with another restaurant. Separate employers may be considered joint employers under FMLA if they both "exercise some control over the work or working conditions of the employee." 29 C.F.R. § 825.106(a). As with determinations of integrated employer status, the joint employer determination does not depend on any single criterion, but rather on the "totality" of the "entire relationship" between the purported joint employers. 29 C.F.R. § 825.106(b). In examining the totality of the entire relationship, the first question for courts is whether the employee's work "simultaneously benefits two or more employers." 29 C.F.R. § 825.106(a). Next, courts may ask if the employee works for the different employers on different days of the workweek. *Id.* If the answer to either question is in the affirmative, then a joint employment relationship "will generally be considered to exist" (1) where the employers have an arrangement to "interchange employees" or "share an employee's services"; (2) where "one employer acts directly or indirectly in the interests of the other employer in relation to the employee"; or (3) where the employers "are not completely dissociated with respect to" the employee, and may be deemed to share common control of the employee,

because one employer controls the other, or because both employers are under the same common control. *Id.*; *see, e.g.*, *Voltaire v. Home Servs. Sys., Inc., et al.*, 823 F. Supp. 2d 77, 96-98 (E.D.N.Y. 2011) (Townes, J.) (applying the factors above to conclude that there was a genuine dispute over whether defendants were joint employers). "Employees employed jointly by two employers must be counted by both employers" for FMLA purposes. 29 C.F.R. § 825.106(d).

Here, if Empire is a joint employer, then its employees would be counted together with the other restaurant's (or other restaurants') and they would both qualify as employers under FMLA. *See* 29 C.F.R. § 825.106(d); Rokuson Decl. ¶¶7-10. For the reasons set forth immediately above, it is unclear whether the restaurants shared common control over Plaintiff, or whether there was any arrangement to interchange employees. *See* 29 C.F.R. § 825.106(a); Rokuson Decl. ¶¶19-20, 23; Helen's Deposition at 68. It is clear that for a time the restaurants were under common control. Lau Decl. ¶¶2, 5. As such, there is a genuine dispute over material facts regarding Empire's possible status as a joint employer.

### 3. There is a Genuine Dispute Over Facts Material to Whether King is a Successor in Interest to East 555.

If Empire was not, in 2012, a single integrated employer or a joint employer with East Sushi, Garden, or Pacific because it was under new ownership, it might still be liable under FMLA as a successor in interest to an employer.

Under FMLA, the term "employer" includes a "successor in interest of an employer." 29 U.S.C. § 2611(4)(A)(ii)(II). "When an employer is a successor in interest, employees' entitlements are the same as if the employment by the predecessor and successor were continuous employment by a single employer." 29 C.F.R. § 825.107(c). As with the determinations regarding integrated or joint employers, the determination of successor in interest

status does not depend on any single criterion, but rather is based on the "totality" of the "entire circumstances." 29 C.F.R. § 825.107(b). Factors to be considered include: "(1) [s]ubstantial continuity of the same business operations; (2) [u]se of the same plant; (3) [c]ontinuity of the workforce; (4) [s]imilarity of jobs and working conditions; (5) [s]imilarity of supervisory personnel; (6) [s]imilarity in machinery, equipment, and production methods; (7) [s]imilarity of products or services; and (8) [t]he ability of the predecessor to provide relief." 29 C.F.R. § 825.107(a); *see, e.g.*, *Slaughter v. Am. Bldg. Maint. Co. of N. Y.*, 64 F. Supp. 3d 319, 327 n.8 (S.D.N.Y. 1999) (Sweet, J.) (finding that corporation was successor in interest because the supervisory and custodial staff, the supervisory and custodial responsibilities, and the working conditions all remained substantially similar after transition from predecessor to successor).

Here, if Empire under the ownership of East 555 (controlled by Peter Lau, *see* Lau Decl. ¶2) was an employer, then Empire under the ownership of King could be a successor in interest. According to Defendants' own papers, several factors involved in deciding a business is a successor in interest exist here. For example, after its sale to King in 2012, Empire continued the same business operations, used the same building, retained the same work force, and kept Helen on as manager. Liu Decl. ¶¶1, 5-7. As such, there is a genuine dispute over facts material to the determination of whether King is a successor in interest to East 555. *See, e.g.*, *Slaughter*, 64 F. Supp. 3d at 327 n.8 (business is successor in interest where supervisory and custodial staff and responsibilities and working conditions remain the same); *Vanderhoof v. Life Extension Inst.*, 988 F. Supp. 507, 513-14 (D.N.J. 1997) (Politan, J.) (applying all eight factors to find that acquiring business was successor in interest).

Therefore, Defendants' motion for summary judgment on the grounds that Empire is not an employer under FMLA is DENIED.

## C. Parties Dispute Material Facts Regarding Whether Plaintiff Has Established a Prima Facie Case of Interference or Retaliation

Genuine issues of material fact also exist as to whether Plaintiff has established a *prima facie* case of interference or retaliation under FMLA. Courts within the Second Circuit have commonly used a particular test for *prima facie* cases of interference with the exercise of FMLA rights (*see* 29 U.S.C. § 2615(a)(1)); however, the Second Circuit has not yet established this test as the rule in FMLA interference cases, despite its common use. *See, e.g., Achille v. Chestnut Ridge Transp., Inc.*, 584 F. App'x 20, 21 (2d Cir. 2014). Under the common test, a plaintiff must show that (1) he is an eligible employee under FMLA, (2) the defendant is an employer as defined under FMLA, (3) the plaintiff was entitled to take leave, (4) the plaintiff gave notice to the defendant of his intent to take leave, and (5) the plaintiff was denied benefits to which he was entitled under FMLA. *See, e.g., Higgins v. NYP Holdings, Inc.*, 836 F. Supp. 2d 182, 193 (S.D.N.Y. 2011) (Engelmayer, J.). The Court will apply this *prima facie* standard for interference in this case.

A *prima facie* case of retaliation for the exercise of rights under FMLA requires the plaintiff to show that: "1) he exercised rights protected under FMLA; 2) he was qualified for his position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent." *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004); *see also Voltaire*, 823 F.Supp.2d at 92. This *prima facie* retaliation standard is the first step of the three-part burden-shifting scheme established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-805 (1973). *See, e.g., Potenza*, 365 F.3d at 168. The plaintiff's burden of proof in this first step "has been characterized as 'minimal' or

'*de minimis.*'" *Desir v. City of New York*, 453 F. App'x 30, 35 (2d Cir. 2011) (quoting *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d. Cir. 2005) (internal citations omitted)).

Here, the disputed element of the *prima facie* case for interference is whether Plaintiff was denied benefits. Plaintiff claims that his reduced hours on his return to work was a denial of benefits; Defendants claim that it was simply a temporary measure taken out of caution and concern. Rokuson Decl. ¶¶27-29; Helen's Decl. ¶¶50-53. The disputed element of the *prima facie* case for retaliation is whether Plaintiff experienced any adverse action at all, let alone under circumstances allowing for an inference of retaliation. Plaintiff claims that he was retaliated against for taking leave and could no longer being unable to work for any of the four restaurants he named; Defendants claim that not only were Plaintiff's reduced hours merely a temporary health accommodation, but that he was never terminated and that he remains welcome to return to work. Complaint at ¶35; Rokuson Decl. ¶29-30; Helen's Decl. ¶¶50, 53; Def's Reply at 9.

All Defendants have shown is that there are conflicting accounts of whether Plaintiff was denied benefits or suffered an adverse action. Viewing the facts in the light most favorable to Plaintiff, this showing is insufficient to support a grant of summary judgment for Defendants. With respect to Plaintiff's *prima facie* case for interference under FMLA, Defendants are not entitled to summary judgment since they cannot provide documentary corroboration of their account. The Court is left to weigh Defendants' account against Plaintiff's, which is inappropriate for summary judgment. *See, e.g.*, *Benimovich v. Fieldston Operating LLC*, 11-CV-780, 2013 WL 1189480 at *4 (S.D.N.Y. Mar. 22, 2013) (Abrams, J.) (denying summary judgment on *prima facie* FMLA interference claim where defendants, the moving parties, could only provide their word against plaintiff's regarding the time of the decision to terminate plaintiff) (citing *Voltaire*, 823 F.Supp.2d at 94). Similarly, Defendants cannot prevail on

summary judgment as to Plaintiff's *prima facie* retaliation claims. For the Court to grant summary judgment, "there must be no questions about the material facts of the *prima facie* case." *Rajcoomar v. TJX Cos., Inc.*, 319 F. Supp. 2d 430, 434 (S.D.N.Y. 2004) (Robinson, J.). A mere showing of conflicting accounts is insufficient. *Lyman v. N.Y. and Presbyterian Hosp.*, 11-CV-3889, 2014 WL 3417394, at *8, *21 (S.D.N.Y. July 14, 2014) (Polk Failla, J.) (denying summary judgment where defendant merely provided conflicting account of material element of plaintiff's *prima facie* case). This is especially true with respect to *prima facie* cases of retaliation because the plaintiff's burden of proof there is minimal. *See, e.g.*, *Desir*, 435 F. App'x at 35. Defendants have not carried their burden for summary judgment, and the Court hereby DENIES their motion.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is DENIED. Furthermore, the Court finds that King is a necessary party and hereby ORDERS Plaintiff to join King to this action within 30 days.

<b><u>SO ORDERED</u></b>

Dated: April 2, 2015
      Brooklyn, New York

s/WFK

HON. WILLIAM F. KUNTZ, II
United States District Judge